IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

)
ERIC FEDEWA,                        )
                                    )
and                                 )
                                    )
RITIKA FEDEWA,                      ) 1:12cv1452 (JCC/TRJ)
                                    )
                                    )
        Plaintiffs,                 )
                                    )
                                    )
            v.                      )
                                    )
                                    )
J.P. MORGAN CHASE BANK,             )
NATIONAL ASSOCIATION,               )
                                    )
and                                 )
                                    )
PROFESSIONAL FORECLOSURE            )
CORPORATION OF VIRGINIA,            )
                                    )
                                    )
        Defendants.                 )


**M E M O R A N D U M   O P I N I O N**

        This matter is before the Court on the Motions of

Defendants J.P. Morgan Chase Bank, National Association [Dkt. 2]

and Professional Foreclosure Corporation of Virginia [Dkt. 6]

(collectively, the "Defendants") to Dismiss the Complaint

(collectively, the "Motions") of Plaintiffs Eric Fedewa and

1

Ritika Fedewa (collectively, the "Plaintiffs"). For the following reasons, Defendants' Motions will be granted.[1]

## I. Background

1. <u>Factual Background</u>

This proceeding is in large part predicated upon the foreclosure of Plaintiffs' residence. On March 3, 2006, Plaintiffs entered into a mortgage-loan transaction in connection with the purchase of real property located at 1034 Founders Ridge Drive, McLean, Virginia (the "Property"). Plaintiffs executed a Note in the amount of $3,290,000 with Washington Mutual Bank, F.A. ("Washington Mutual") as lender, and contemporaneously executed a Deed of Trust as a security interest, thereby encumbering the Property. (Compl. 2; J.P. Morgan Mem. Mot. 1-2.) Washington Mutual was later seized by the United States Office of Thrift Supervision ("OTS") and placed into the receivership of the Federal Deposit Insurance Corporation ("FDIC") on September 25, 2008. The FDIC sold certain assets and liabilities of Washington Mutual to J.P. Morgan Chase Bank ("J.P. Morgan") pursuant to a written Purchase and Assumption Agreement. (J.P. Morgan Mem. Mot. 4-5.) At some point, trustee Professional Foreclosure Corporation of Virginia ("PFC") was appointed substitute trustee. (Compl. 2; J.P. Morgan Mem. Mot. 2; PFC Mem. Mot. 4.)

---

[1] It should be noted that Plaintiffs' counsel did not appear at the scheduled January 18, 2013 hearing upon Defendants' Motions to Dismiss.

Plaintiffs do not expressly concede that they failed to make requisite mortgage payments, but state in the Complaint that "[J.P. Morgan] Chase asserts that it is the holder of the Note. [J.P. Morgan] Chase further asserts that the Note is in default and has instructed the Trustee to sell the Property at public auction pursuant to the terms of the Trust and the sale is scheduled for November 27, 2012." (Compl. 2.) The primary issue of which Plaintiffs complain is Defendants' purported disinclination to furnish evidence that Defendant J.P. Morgan is the true holder of the subject Note. According to the Complaint, Plaintiffs have asked to review the Note but have not been able to do so. Plaintiffs represent that "[PFC] has claimed they have the original note but it was in their office in Virginia Beach. When questioned abut (sic) transferring it to Fairfax for review, the plaintiffs were advised a few days ago that the original was now in Fairfax." (Compl. 2.) Plaintiffs state that "[d]ue to the time of the foreclosure and the Thanksgiving holiday, the plaintiffs are unable to view such note at this time. [J.P. Morgan] Chase has produced conflicting documents to be copies of the Note but which contain inconsistent information." (*Id.*) Regarding the purported inconsistencies between the furnished copies of the Note, it is unclear from the Complaint the precise nature of those

discrepancies, as the allegedly conflicting copies of the Note are not in the record and not described in the Complaint.

Plaintiffs assert that they have "made numerous requests of [J.P. Morgan] Chase to produce evidence that they are the holder of the Note and entitled to enforce the terms of the Trust ... To date, [J.P. Morgan] Chase, has failed to produce the appropriate documentation." (*Id.*) They contend that they have made numerous "requests" pursuant to the Federal Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") and that, "[i]n violation of such laws, [J.P. Morgan] Chase, has failed to fully respond to the requests." (Compl. 3.) Plaintiffs state that if Defendant J.P. Morgan is the holder of the Note, then they have "breached [their] agreement with the plaintiffs." (*Id.*) Plaintiffs further argue that "[J.P. Morgan] Chase and the Trustee should not be permitted to sell the Property pursuant to the Trust, until such time as they have complied with all of the requests of the plaintiffs and produced evidence that they are the holder2 (sic) of the Note." (*Id.*)

2. Procedural Background

Plaintiffs' Complaint was originally filed in the Circuit Court for Fairfax County, Virginia on November 21, 2012. [Dkt. 1-1.] On December 18, 2012, Defendant filed a Notice of Removal pursuant to 28 U.S.C. § 1446(d). [Dkt. 1.] On December

4

26, 2012, Defendant J.P. Morgan Chase Bank filed their first Motion to Dismiss. [Dkt. 2.] They also filed an accompanying Memorandum in Support. [Dkt. 3.] On December 27, 2012, Defendant PFC filed a Motion to Dismiss for Failure to State a Claim. [Dkt. 6.] They also filed a Memorandum in Support. [Dkt. 7.]

Plaintiffs have not filed any Answer or Opposition to Defendants' Motions that are now before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic

recitation of the elements of a cause of action will not do."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)
(citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" *Ashcroft v.
Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Id.* However, "[t]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements,
do not suffice" to meet this standard, *id.*, and a plaintiff's
"[f]actual allegations must be enough to raise a right to relief
above the speculative level . . . ." *Twombly*, 550 U.S. at 555.
Moreover, a court is "not bound to accept as true a legal
conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at
678.

### III. Analysis

In Virginia, notes are negotiable instruments that are
freely transferable without impairment of the rights to
subsequent holders. *See, e.g., Daugherty v. Diment*, 238 Va. 520,
525 (1989). Virginia law is clear that the negotiation of a
note or bond secured by a deed of trust or mortgage carries with

it that security. *Williams v. Gifford*, 139 Va. 779, 784 (1924)
("[I]n Virginia, as to common law securities, the law is that
both deeds of trust and mortgages are regarded in equity as mere
securities for the debt and whenever the debt is assigned the
deed of trust or mortgage is assigned or transferred with it.").
Such has historically been the case in Virginia and,
consequently, the transfer of a note carries with it the
security interest provided for in the deed of trust. *See Va.
Housing Dev. Auth. v. Fox Run Ltd.*, 255 Va. 356, 364 (1988); *see
also Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886) ("It is
undoubtedly true that a transfer of a secured debt carries with
it the security without formal assignment or delivery.").

Virginia is a non-judicial foreclosure state. The
Virginia Code sets forth the procedural requirements for a non-
judicial foreclosure. A borrower's default allows the trustee
(or substitute trustee) to "declare all the debts and
obligations secured by the deed of trust at once due and payable
and may take possession of the property and proceed to sell the
same . . . ." Va. Code Ann. § 55-59(7). Indeed, it is
axiomatic that "the current holder of the note[ ]has authority
to foreclose." *Bernardo v. Nat'l City Real Estate Servs.*, 435
Fed.Appx. 240 (4th Cir. 2011). Under Virginia law, the holder
of an instrument or a non-holder in possession of the instrument
with the same rights as the holder may enforce the instrument.

Va.Code. Ann. § 8.3A-301. An individual becomes the "holder" of an instrument through the process of negotiation, and if "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id*. at § 8.3A-201(b). Va. Code § 55-59(7) describes the authority of the trustee to foreclose and sell property provided as security for a loan as follows:

> In the event of default in the payment of the debt secured or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction.

In addition, a person entitled to enforce the instrument may constitute "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 8.3A-309 or § 8.3A-418 (d)."[2] Va.Code. Ann. § 8.3A-301. Finally, Virginia law

---

[2]Va. Code § 8.3A-309 states that "[a] person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." Va. Code § 8.3A-418 (d) states that "[n]otwithstanding § 8.4-213, if an instrument is paid or accepted by mistake and the payor or acceptor recovers payment or revokes acceptance under subsection (a) or (b), the instrument is deemed not to have been paid or accepted and is treated as dishonored, and the person from whom payment is

provides that "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.*

1. Plaintiffs' Demand for Verification of J.P. Morgan's Possession of the Note

In essence, Plaintiffs' Complaint is largely predicated upon the allegation that Defendant J.P. Morgan have failed to furnish satisfactory verification that they are in possession of the original Note. Plaintiffs contend that because Defendants have failed to furnish verification over the Plaintiffs' repeated demands, this Court therefore should enjoin the November 27, 2012 foreclosure of Plaintiffs' domicile and conduct an inquiry into "the party that has the legal right to direct and conduct such a sale..." (Compl. 3.)

The Court declines to pursue such a course of action, as Plaintiffs' Complaint merely espouses a recast "show me the note" theory, which has been widely rejected as "contrary to Virginia's non-judicial foreclosure laws." *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F.Supp.2d 714, 721 (W.D.Va.2011) (citation omitted). *Accord Minix v. Wells Fargo Bank*, 81 Va. Cir. 130, 2010 WL 7765589, at *4 (Fairfax Cnty. Aug. 24, 2010) (cautioning that courts should not "be creating a judicial

recovered has rights as a person entitled to enforce the dishonored instrument."

foreclosure procedure when the legislature has mandated a non-judicial procedure to be appropriate") (citation omitted).

Section 55-59.1 of the Virginia Code specifically states that:

> If a note or other evidence of indebtedness
> secured by a deed of trust is lost or for
> any reason cannot be produced ..., the
> trustee may nonetheless proceed to sale,
> provided the beneficiary has given written
> notice to the person required to pay the
> instrument that the instrument is
> unavailable and a request for sale will be
> made of the trustee upon expiration of 14
> days from the date of mailing of the notice.

Va.Code § 55-59.1(B). The Court must reject Plaintiffs' claim that a secured party is required to come to a court of law and prove its authority or standing to foreclose on the secured property. "Sections 55-59.1 through 55-59.4 [of the Virginia Code], which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove 'standing' in a court of law before initiating the foreclosure process." *Tapia v. United States Bank, N.A.*, 718 F.Supp.2d 689, 698 (E.D.Va. 2010).

2. Plaintiffs' Request for Declaratory Relief

To the extent that the Plaintiffs seek a declaratory judgment regarding the validity of the November 27, 2012 foreclosure sale, the Court agrees with the Defendants that such relief is inappropriate. (J.P. Morgan Mem. Mot. 9.) "[D]eclaratory judgments are designed to declare rights so that

parties can conform their conduct to avoid future litigation."
*Tapia*, 718 F.Supp.2d at 695.  Such relief "is unavailable in
situations where ... 'claims and rights asserted have fully
matured, and the alleged wrongs have already been suffered.' "
*Trull v. Smolka*, 2008 WL 4279599, at *8, 2008 U.S. Dist. LEXIS
70233, at *24 (E.D.Va. Sept. 18, 2008) (quoting *Bd. of
Supervisors v. Hylton Enters.*, 216 Va. 582, 221 S.E.2d 534, 537
(1976)).  The relief sought by Plaintiffs is the injunction of
the November 27, 2012 foreclosure sale.  The Court notes that
this date has already passed, and Defendants have represented
that the foreclosure sale set for that date did not take place
because it was cancelled.  Consequently, this Court is no longer
capable of granting that component of the relief sought by
Plaintiffs.[3]

3. <u>Plaintiffs' TILA and RESPA Requests</u>

        In their Complaint, Plaintiffs allege that they have
made several requests of Defendant J.P. Morgan under the Truth
in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate
Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, but that

_____

[3] The Court is not aware of any further developments that have taken place
with regard to Plaintiffs' property or the foreclosure thereof.  If
foreclosure has already taken place, however, then "the alleged wrong or
questionable conduct has already occurred (the foreclosure) [and] declaratory
relief is inappropriate." *Ramirez–Alvarez v. Aurora Loan Servs.*, LLC, 2010 WL
2934473, at *3, 2010 U.S. Dist. LEXIS 116995, at *6 (E.D.Va. July 21, 2010).
In that case, seeking a declaratory judgment as to title and interest in the
property is inapposite to the underlying purpose of declaratory relief.
*Merino v. EMC Mortg. Corp.*, CIV.A 1:09-CV-1121, 2010 WL 1039842 (E.D.Va. Mar.
19, 2010).

Defendant has "failed to fully respond." (Compl. 4.) Plaintiffs contend that "[J.P. Morgan] has indicated a charge to the Note of $140,000 for other fees, but refuses to explain such fees and the basis for their liability by the plaintiffs. [J.P. Morgan] further provided interest rate information which did not comply with the Note and Trust." (Compl. 4.)

Although it is not clear from the Complaint whether Plaintiffs actually attempt to plead violations of TILA and RESPA, particularly so in light of the actual relief sought through this proceeding, the Court will entertain their allegations as though they constitute at least an attempt at proper pleading. Despite their broad allegations of wrongdoing, Plaintiffs do not cite any specific provisions of TILA and RESPA that they believe either Defendant has violated through their conduct. Beyond their alleged failure to respond to Plaintiffs' requests to furnish verification that Defendant is the holder of the Note, it is not clear precisely what acts Defendants performed or failed to perform that contravene the relevant tenets of TILA and RESPA.[4] The Court notes that, in light of the fact that Plaintiffs are represented by counsel, their pleadings are not construed with the level of deference afforded to *pro se* Plaintiffs.

---

[4] The Court notes that Defendant's conduct has been adjudged to have been proper in the foregoing, and nothing in TILA and RESPA contravenes that judgment.

RESPA mandates good faith estimates and disclosure of settlement terms and interest rates from lenders in order to allow consumers to evaluate whether they can afford all aspects of their loan. *See* 12 U.S.C. § 2601(a)-(b). Regarding Plaintiffs' purported requests under RESPA, 12 U.S.C. § 2605(e) states that "*[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower* . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." (emphasis added). A "qualified written request" is defined as

> a written correspondence, other than notice
> on a payment coupon or other payment medium
> supplied by the servicer, that (i) includes,
> or otherwise enables the servicer to
> identify, the name and account of the
> borrower; and (ii) includes a statement of
> the reasons for the belief of the borrower,
> to the extent applicable, that the account
> is in error or provides sufficient detail to
> the servicer regarding other information
> sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Creditors have sixty days following the receipt of a qualified written request to make requested changes to the borrower's account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of a representative who can answer any questions about the account. 12 U.S.C. § 2605(e)(2). A party to the loan transaction is not subject to

13

RESPA requirements for responding to a qualified written request unless that party actually received the qualified written request. *Morilus v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 44943 (E.D.Pa. June 20, 2007).

To the extent Plaintiffs attempt to state a cause of action under RESPA, their efforts must fail. Plaintiffs have not pleaded that they actually sent a qualified written request to which either Defendant failed to respond. The Complaint contains no details as to the substantive content of the request, when the requests were sent by Plaintiffs and received by Defendant, or whether the form of the requests comported with the requirements of RESPA. Indeed, the very form of the requests themselves is wanting for explication. There is no indication of whether Plaintiffs' requests were oral or written, and if the requests were written, they are not part of the record. In any event, Plaintiffs' Complaint does not describe the requests as having been written. Because Plaintiffs do not provide the aforementioned details regarding their requests, the plain language of the statute indicates that Defendant may not be held liable for failure to respond to these inquiries. Furthermore, RESPA itself holds that "[n]othing in this chapter shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan

agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." 12 U.S.C. § 2615.

The stated purpose of TILA is to provide for the informed use of credit by consumers. 15 U.S.C. § 1601(a). To facilitate informed consumer decisions, the Act requires "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The content and presentation of loan agreements are regulated by TILA and implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226. TILA is a disclosure statute. It does not substantively regulate consumer credit but rather "requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001). Under TILA and Regulation Z, a lender must disclose to a borrower "certain material terms clearly and conspicuously in writing, in a form that [Plaintiff] may examine and retain for reference." *In re Webster*, 300 B.R. 787, 799 (Bankr. W.D.Okla. 2003)(citing 15 U.S.C. §§ 1638(b)(1) & 12 C.F.R. § 226.17(a)(1))(internal citations omitted). Disclosures must be made before credit is extended, thus before the transaction is consummated, and must reflect the actual terms of the legal

15

obligation between the parties. 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b) & (c)(1).

Thus, under TILA, a creditor's principal disclosure obligations arise before the credit transaction is consummated. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir. 1980); 12 C.F.R. § 226.17(b) ("The creditor shall make disclosures before consummation of the transaction."). Consummation, in turn, is defined by Regulation Z as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); *see Cades v. H & R Block, Inc.*, 43 F.3d 869, 876 (4th Cir. 1994); *Harper v. Lindsay Chevrolet*, 212 F.Supp.2d 582, 587 (E.D.Va. 2002). In closed-end transactions, the required disclosures under TILA are to be made as of the time that credit is extended and it is as of that time that the adequacy and accuracy of the disclosures are measured. *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998); 15 U.S.C. § 1638(b). It should be noted that a creditor is not required to make disclosures above and beyond those required by TILA. *See Cosby v. Mellon Bank, N.A.*, 407 F.Supp. 233, 234 (W.D.Pa. 1976) ("[T]he requirements of disclosure under the [Truth in Lending] Act do not apply to all information that a creditor might furnish to a customer but only to that information the Act requires to be 'disclosed' to a customer").

It must be noted that many of the basic details of Plaintiffs' TILA allegations are not clear in this case. Unlike a typical TILA claim, Plaintiffs here do not allege that a disclosure violation took place prior to extension of the subject loan or around consummation. Plaintiffs have not alleged that Defendant J.P. Morgan failed to provide them with requisite disclosure information at the origination of their loan, or that they were provided with inaccurate or incomplete information. Indeed, for Defendant J.P. Morgan to have done so would be impossible under the facts of the instant proceeding, as Plaintiffs' loan originated with Washington Mutual.[5]

Nevertheless, the Court need not reach a discussion of the legal relationship between the two financial entities in this matter. Regardless of whether TILA liability may be imputed to Defendant J.P. Morgan from actions or inaction on the part of Washington Mutual, in any event it is clear that Plaintiffs have not pleaded sufficient facts to support a TILA claim.

Regarding the $140,000 charge "for other fees" associated with the loan, the Compliant states that Defendant J.P. Morgan "refuses to explain such fees or the basis for liability by the plaintiffs." (Compl. 3.) The Complaint

---

[5] As stated in the foregoing, Washington Mutual was later closed by the FDIC, and certain assets were eventually sold to Defendant J.P. Morgan pursuant to a Purchase and Assumption Agreement.

provides scant background upon which to evaluate this allegation, and the paucity of accompanying information fatally undermines any TILA claim Plaintiffs might have attempted to state though the allegation. The Complaint does not contain any substantive information regarding the purported basis for or assessment of the charge. There is no information in the Complaint with regard to when the charge was assessed. There are no facts in the Complaint relating to Defendant's alleged refusal to explain the basis of the charge. There is not any explanation of how assessment of the charge differs from the terms of the existing loan agreement, or why disclosure of the basis for the charge is required under TILA. Indeed, Plaintiffs have not cited any authority in support of their TILA allegations and have not cited a specific part of TILA that they believe has been violated.

In addition, the Complaint does not contain any explanation as to how the interest rate information that was provided to Plaintiffs was inaccurate, incomplete, or differs from the information that had previously been provided or differs from the information that Plaintiffs believe Defendants should have provided. Indeed, there is no indication from the Complaint as to what the substance of the provided interest rate information was. Furthermore, Plaintiffs have not explained how

the information itself or Defendants' conduct contravene the provisions of either TILA or RESPA.

Despite the ostensible inference of the Complaint that Plaintiffs have made other requests for information that went unanswered by Defendants, the Complaint does not explain what those additional requests entailed. To the extent that the purported requests made by Plaintiffs pursuant to TILA and RESPA extend beyond their request for verification that Defendant J.P. Morgan is the true holder the Note and example of a request for information concerning the origin of a charge to the Note, it is not clear whether there were other requests made by Plaintiffs to Defendants and what the precise content of those requests would have been. Plaintiffs have not explained or attached documentation capable of expounding the content of any such requests. Indeed, there is simply nothing in the record that describes when Plaintiffs' requests were made and what those requests entailed.

In summation, Plaintiffs' allegations with regard to TILA and RESPA are so summarily pled that they do not raise a right to relief above the speculative level. Plaintiffs' Complaint does not contain "sufficient factual matter" to

support their conclusory allegations that Defendants have violated RESPA and TILA.[6]

### 4. "Breach[] [of the Parties'] Agreement"

It is not clear from the Complaint the precise wrongdoing Defendant PFC is alleged to have committed. Plaintiffs have not cited any specific violation of the terms of the Note or Deed of Trust that they believe PFC to have committed. It is well-settled that "[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts." *Warner v. Clementson*, 254 Va. 356, 361 (1997).

Though the Complaint boldly asserts that "[i]f [J.P. Morgan] is the holder of the Note, it has breached its agreement with the plaintiffs[,]" a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Similarly, to the extent that Plaintiffs believe that Defendant J.P. Morgan is in breach of some component of their agreement through conduct that the Court has not already discussed in the foregoing, it is not clear from the Complaint the precise nature of the breach or the precise wrongdoing Defendant J.P. Morgan is alleged to have undertaken.

### IV. Conclusion

---

[6] Though it appears to be a distinct possibility that Plaintiffs' TILA and RESPA claims are time-barred, due to the substantive deficiency of the Complaint, the Court need not reach Defendants' statute of limitations argument.

For the foregoing reasons, the Court will grant the Defendants' Motions to Dismiss.

An appropriate Order will issue.

|                          | /s/                                |
| ------------------------ | ---------------------------------- |
| January 29, 2013         | James C. Cacheris                  |
| Alexandria, Virginia     | UNITED STATES DISTRICT COURT JUDGE |